## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **CYNTHIA WEBB,** | ) | **7:08-cv-03565 (KMK)** |
| | ) | **ECF Case** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | | **FIRST AMENDED** |
| | ) | **COMPLAINT** |
| **EAST RAMAPO CENTRAL SCHOOL** | ) | |
| **DISTRICT; EAST RAMAPO BOARD** | ) | |
| **OF EDUCATION; ERIC BRAND,** | ) | |
| **MITCHELL SCHWARTZ; JOE L.** | ) | |
| **FARMER; MARY SCULNICK; JEAN** | ) | **JURY TRIAL** |
| **E. FIELDS; RICHARD J. NEIDHART;** | ) | **DEMANDED** |
| **and AUGUSTINA WEST,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## I.    NATURE OF THE ACTION

1.    Plaintiff Cynthia Webb ("Ms. Webb"), a former English teacher at Ramapo High School ("Ramapo H.S.") from 2003-2007, brings this action to remedy the unlawful age and gender discrimination, sexual harassment, and retaliation that she suffered at the hands of her employers, Defendants East Ramapo Central School District (the "District") East Ramapo Board of Education (the "Board"), and their employees and/or agents, and for related relief, all as hereinafter alleged.

2.    Beginning in or about September 2005, Ms. Webb was subjected by Defendant Eric Brand ("Brand"), the Chairman of the Ramapo H.S. English Department and an employee of the District, to a deliberate and systematic course of conduct that constituted, *inter alia*, age discrimination, sexual harassment, and retaliation.    In particular, upon his arrival at Ramapo H.S. at the start of the 2005-2006 school year,



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CYNTHIA WEBB,                              )
                                           )
                Plaintiff,                 )          **FIRST AMENDED**
                                           )          **COMPLAINT**
v.                                         )
                                           )
EAST RAMAPO CENTRAL SCHOOL                 )
DISTRICT; EAST RAMAPO BOARD                )
OF EDUCATION; ERIC BRAND,                  )          **JURY TRIAL**
MITCHELL SCHWARTZ; JOE L.                  )          **DEMANDED**
FARMER; MARY SCULNICK; JEAN                )
E. FIELDS; RICHARD J. NEIDHART;            )
and AUGUSTINA WEST,                        )
                                           )
                Defendants.                )
                                           )
                                           )

## I.    NATURE OF THE ACTION

1.    Plaintiff Cynthia Webb ("Ms. Webb"), a former English teacher at Ramapo High School ("Ramapo H.S.") from 2003-2007, brings this action to remedy the unlawful age and gender discrimination, sexual harassment, and retaliation that she suffered at the hands of her employers, Defendants East Ramapo Central School District (the "District") East Ramapo Board of Education (the "Board"), and their employees and/or agents, and for related relief, all as hereinafter alleged.

2.    Beginning in or about September 2005, Ms. Webb was subjected by Defendant Eric Brand ("Brand"), the Chairman of the Ramapo H.S. English Department and an employee of the District, to a deliberate and systematic course of conduct that constituted, *inter alia*, age discrimination, sexual harassment, and retaliation. In particular, upon his arrival at Ramapo H.S. at the start of the 2005-2006 school year,

Defendant Brand bragged about the tactics he had used at his previous job with the New York City Department of Education in order "to get rid of" older teachers. He then proceeded to implement these same tactics at Ramapo H.S. in order to prevent Ms. Webb from receiving tenure.    Furthermore, Defendant Brand created a hostile work environment on the basis of gender through repeated and pervasive sexually charged comments primarily regarding other Ramapo H.S. employees as well as students.

      3.      Upon information and belief, Defendants District and Board, by and through Defendants District Superintendent Mitchell Schwartz ("Schwartz"), District Deputy Superintendent Joe L. Farmer ("Farmer"), District Personnel Director Mary Sculnick ("Sculnick"), Ramapo H.S. Principal Jean E. Fields ("Fields"), Ramapo H.S. Assistant Principal of Administration Richard J. Neidhart ("Neidhart"), and Ramapo H.S. Assistant Principal Augustina West ("West")[1] allowed and/or encouraged Defendant Brand to undertake and/or continue such unlawful, wrongful, and/or improper conduct and behavior, including the following:

- Coercing teachers to engage in sexually explicit dramatic readings during department meetings;

- Describing his own sexual agendas, including that he would not have sex with teachers, but would with fellow chairwomen;

- Making numerous inappropriate and shocking sexual comments about female students, such as "[she has] curves in all the right places," "[she's] supermodel material," and suggestively quipping, "If she were older and I weren't married…"; and

---

[1] Defendant Schwartz, Defendant Farmer, Defendant Sculnick, Defendant Fields, Defendant Neidhart, and Defendant West are collectively referred to herein as the "Administrative Defendants" or the "Administrative Defendants;" the Administrator Defendants and Defendant Brand are collectively referred to herein as the "Individual Defendants;" and the District, the Board, and the Individual Defendants are collectively referred to herein as the "Defendants."

- Exhibiting lecherous behavior that made at least one female student uncomfortable in his presence, convinced that he was "looking her up and down."

4.      The District, the Board, and the Administrator Defendants failed to investigate Ms. Webb's claims, even though they were informed and thus knew of her grievances, and further failed to take any disciplinary action against Defendant Brand for his egregious behavior.  Additionally, despite knowledge of Defendant Brand's conduct – including his attempt to manipulate Ms. Webb's tenure vote by creating unjustified performance reviews and levying unwarranted criticism, the District and Board by and through their employees and/or agents, including each of the Individual Defendants, wrongfully denied tenure to Ms. Webb in approximately November 2006-January 2007 and constructively discharged her on January 26, 2007.

## II.      PROCEDURAL HISTORY

5.      On April 13, 2007, Ms. Webb filed a Notice of Claim with the District and the Board in accordance with N.Y. Gen. Mun. L. §§ 50-e and 50-i and N.Y. Educ. L. § 3813, detailing her allegations and claims against the Defendants.  Following this notice, the Defendants served upon Ms. Webb a Demand for Examination in accordance with N.Y. Gen. Mun. L. § 50-h.  Ms. Webb was orally examined under oath on August 10, 2007.  As of this date, the Defendants have neglected and refused to pay Ms. Webb's claims or to provide her with any other relief.

6.      Ms. Webb filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 17, 2007, alleging age-based and gender-based discrimination, sexual harassment, hostile work environment, and retaliation.

7.      On January 18, 2008, after determining that it would be unable to

3

complete its investigation of Ms. Webb's claim within 180 days of the initial charge, the EEOC issued Ms. Webb a Right to Sue letter. Ms. Webb duly complied with the Right to Sue letter and commenced this lawsuit within 90 days of receipt thereof.

## III.    PARTIES

### A.    The Plaintiff

8.    Ms. Webb was at all relevant times alleged herein a resident of Chestnut Ridge, New York, located in Rockland County. Ms. Webb was a substitute teacher at Ramapo H.S. during the 2001-2002 school year and a full time teacher at Ramapo H.S. from September 2003 to January 2007, when she was constructively discharged from her employment as hereinafter alleged.

### B.    Defendants

9.    Defendant District was at all relevant times alleged herein located in Spring Valley (Rockland County), New York. The District operates several schools from the Pre-Kindergarten through High School level, including Ramapo H.S. Among its core "Values" listed on its website, the District includes its commitment to "collaborative relationships," "diversity," "a safe and nurturing environment," "respect for oneself and others," and "ethical behavior."

10.    Defendant Board was at all relevant times alleged herein the school board for the District and composed of nine members elected by the community to three-year terms. According to the District's website, the Board was responsible for "selecting the Superintendent of Schools," "adopting goals and objectives," "establishing policies for the operation of the District," "providing and promoting a budget," "levying taxes," "setting educational policy approving the appointment of all school district personnel and

4

contracts," and "meeting all requirements of state education law." Under the District's Code of Conduct, the Board was supposed to "collaborate" with students, teachers, administrators, parents, school safety personnel, and other school employees to develop policies regarding appropriate conduct by students, personnel, and school visitors; and was further to annually review and evaluate the fairness and effectiveness of these measures, as implemented and enforced by its administrators and staff, and to adopt revised policies.

11.    Defendant Schwartz was at all relevant times alleged herein the Superintendent of the District. Defendant Schwartz retired on or about January 14, 2008. As Superintendent, one of Defendant Schwartz's primary responsibilities was to "review with District administrators the policies of the Board of Education and state and federal laws relating to school operations and management."

12.    Defendant Farmer was at all relevant times alleged herein the Deputy Superintendent for Secondary Education for the District, and was responsible for overseeing the District's middle schools and high schools, including Ramapo H.S.

13.    Defendant Sculnick was at all relevant times alleged herein the Director of Personnel and Employment Compliance Officer for the District, and was responsible for ensuring equal employment opportunity in District schools including compliance with federal, state, and local anti-discrimination laws.

14.    Defendant Fields was at all relevant times alleged herein the Principal of Ramapo H.S., a position she has held since her appointment by the Board in July 2005. Prior to her appointment to this position, Defendant Fields was a teacher and Assistant Principal at Ramapo H.S. Upon information and belief, Defendant Fields resides in

Rockland County.

15.     Defendant Neidhart was at all relevant times alleged herein the Assistant Principal of Administration at Ramapo H.S., a position he has held since his appointment by the Board in 2002.  Prior to his appointment to this position, Defendant Neidhart was the Dean of Students at Chestnut Ridge Middle School, where he was responsible for ensuring a safe school environment.

16.     Defendant West was at all relevant times alleged herein an Assistant Principal at Ramapo H.S.

17.     The District's Code of Conduct specifies that its Principals and Superintendent are supposed to "[p]romote a safe, orderly and stimulating school environment, supporting active teaching and learning."

18.     Defendant Brand was at all relevant times alleged herein the Chairman of the English Department at Ramapo H.S., a position he has held since his appointment by the Board in September 2005, and in that role was Ms. Webb's immediate supervisor until her constructive discharge in January 2007.  Upon information and belief, prior to his appointment to this position, Defendant Brand was an assistant principal at a public school in New York City.

19.     Upon information and belief, Defendant Brand committed improper acts of age and gender discrimination against teachers at the school in New York City where he worked immediately before being employed by the District.  Further, upon information and belief, at the time he was hired by the District, Defendant Brand was a prime defendant in an age discrimination lawsuit against the New York City Board of Education.

20.    Defendant Brand was directly and personally responsible for the acts of discrimination and retaliation alleged herein.

21.    Upon information and belief, the Administrative Defendants, who were Defendant Brand's supervisors and Ms. Webb's supervisors, acting on behalf of the District and Board, as well as in their personal capacities, acquiesced in, ratified, and/or negligently, recklessly, and/or willfully failed to stop and/or otherwise address Defendant Brand's outrageous actions, including the severe and pervasive discrimination and hostile work environment perpetrated by him at Ramapo H.S.

22.    Upon information and belief, the Administrative Defendants, acting on behalf of the District and Board, as well as in their personal capacities, recklessly and/or negligently hired and retained Defendant Brand despite actual and/or constructive knowledge of his discriminatory and harassing methods, intentions, and conduct both in his previous employment with the New York City school system and at Ramapo H.S.

23.    Upon information and belief, the Individual Defendants, including Defendants Brand, West, Fields, Farmer, Sculnick, and Schwartz, directly participated in and/or were involved in the decision to deny tenure to Ms. Webb.

## IV.    JURISDICTION AND VENUE

24.    Jurisdiction over the Defendants is properly vested under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et. seq.*; Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et. seq.*; and 42 U.S.C. § 1983.  The District and the Board are located in Rockland County, New York, where Ramapo H.S. is also situated.  The Individual Defendants were officers, agents, and/or employees of the

7

District during the events giving rise to this claim, and with the exception of Defendant Schwartz, continue to be so employed.

25.    Venue is proper in this Court because Defendants District and Board reside in this judicial district and the events giving rise to this claim occurred in this judicial district. Ms. Webb, as well as, upon information and belief, one or more of the Individual Defendants, are residents of this judicial district. All of the Individual Defendants were employed by the District during the circumstances from which the particular claims against them arise.

## V.    FACTUAL ALLEGATIONS

26.    During the 2001-2002 school year, Ms. Webb was employed by the District as a substitute teacher. From in or about September 2003 through in or about January 2007, Ms. Webb was employed by the District to teach English full time at Ramapo H.S. Ms. Webb holds a BA in English Literature, an MFA in Creative Writing, is certified to teach English and Social Studies, grades 7-12, in New York, and is admitted to practice law in New York. In addition to her teaching duties, Ms. Webb coached the Ramapo High School Mock Trial Team, which was undefeated in Rockland County, and reached the final round of the Regional tournament.

27.    At the time of the events in question, from approximately September 2005 to approximately January 2007, Ms. Webb was 49-50 years of age.

28.    Defendant Brand began serving as the Chairman of the Ramapo H.S. English Department in September 2005 and thereafter was Ms. Webb's immediate supervisor until her constructive discharge.

29.    Upon information and belief, the Administrative Defendants failed to

conduct a sufficient, if any, background investigation into Defendant Brand and his employment history, including but not limited to failing to contact anyone from his previous position as an administrator with the New York City Department of Education. Upon information and belief, such investigation would have disclosed Defendant Brand's history of harassment and discrimination.

30.    Upon information and belief, Individual Defendants Fields, Sculnick, Farmer, and Schwartz participated in, were involved in, or approved the decision to hire Defendant Brand and/or set employment policies for the District and Ramapo H.S.

31.    Prior to Defendant Brand's appointment, Ms. Webb was recognized as an exemplary teacher; she consistently received good performance evaluations, had positive relationships with her colleagues, and was well-liked by her students. Her personnel file contained excellent classroom observation reports and/or evaluations from, among others, Defendant Farmer, at that time acting principal of Ramapo H.S. Ms. Webb has also since received letters of commendation, contained within her personnel file, for her assistance in writing a grant for professional development funds, as well as her work in developing and writing the curriculum for a course in Law and Literature. Ms. Webb was on track to receive tenure in February 2007.

A.    **Age Discrimination**

32.    From the beginning of Defendant Brand's employment at Ramapo H.S., he repeatedly and consistently made hostile, threatening, and offensive comments to Ms. Webb regarding older teachers, including herself, and his intention to force them to retire. Defendant Brand said that he would be an "agent of change" to get rid of "older" department members, who were "burnt out" and not "in touch" with their students. He

often added that while it would be difficult for him to get rid of a tenured teacher, there was "almost nothing" that could be done to prevent him from pushing out an untenured department member.  In such instances, Ms. Webb asked if Defendant Brand was trying to "frighten" her; he replied that he was just telling her how "it was."

33.    Upon information and belief, Defendant Brand also made comments to other Ramapo H.S. personnel regarding his preference against older department members in favor of younger teachers.  Upon information and belief, Defendant Brand also expressed resentment at the higher salary paid to older teachers in the Department.  For example, upon information and belief, Defendant Brand complained to other teachers, including union representative Peggy Matthews, about a tenured teacher who was paid at approximately Ms. Webb's salary, stating: "I can't believe she makes so much money."

34.    Defendant Brand further stated to Ms. Webb that it had been his "charge" in his previous employment as an Assistant Principal in New York City and in other positions to "get rid of dead wood."  On numerous occasions, he described methods he had used to forcibly retire older teachers, including poor performance evaluations, selective class scheduling, criticizing their choice of course material, generally seeking to make them unhappy in their jobs, and preventing them from obtaining transfers to other schools.  Within the first few months of Defendant Brand's employment at Ramapo H.S., he told Ms. Webb that an EEOC complaint had been filed against him and other employees of the New York City Board of Education charging him with, among other things, age discrimination.  Defendant Brand laughed when he told Ms. Webb about this and explained that he found it funny.  He said that older teachers often are "burned out," get paid too much money, and aren't "in touch" with students, particularly "minority"

students.    (The majority of the students at Ramapo H.S. are "minority" students.) Defendant Brand further stated that another defendant in the suit, an acquaintance of his, had attempted to force an older teacher with bad knees to quit by deliberately assigning her a schedule that required her to travel throughout the school; Defendant Brand said he thought the administrator had done the right thing.

35.    While Defendant Brand acknowledged that he had been accused of "arrogance" surrounding his methods, he insisted that he was right and that "it's only arrogance if you're wrong." He further stated that he couldn't help it if the older female teachers subjected to his techniques did not like being supervised by a younger man.

36.    Shortly after he started working at Ramapo H.S., Defendant Brand began to use the very same tactics against Ms. Webb and other teachers over 40 years of age, especially targeting Ms. Webb due to her lack of tenure. Ms. Webb began to receive unwarranted negative performance reviews, arduous class schedules, and criticism about her selection of course materials. Defendant Brand further subjected Ms. Webb to false accusations, excessive scrutiny, and numerous harassing tactics. Defendant Brand undermined Ms. Webb's authority with her students by, among other techniques, inviting them to make reports to him so that he could build a documented case against her. Younger teachers were not treated in similar fashion and were given favorable treatment.

37.    One of the key, tried-and-true tools in Defendant Brand's arsenal was to withhold "good" classes from Ms. Webb and assign so-called "difficult" classes, lower-level or remedial courses in which were placed a concentration of students with learning or behavioral problems, many of whom had extensive disciplinary records and/or refused to do any schoolwork. Two deans of discipline assigned to Ramapo H.S. told Ms. Webb

that it was unfortunate that so many "difficult" students were assigned to her classes, and one of them said: "I don't know why they do that to you."

38.    Along with assigning such classes, Defendant Brand required that Ms. Webb issue written reports ("referrals") to school administration regarding any behavioral issues in her classroom, including repeatedly issuing absence reports for students who had never shown up to school that year.  When Ms. Webb objected that legally such students should have been taken off her class lists, Defendant Brand insisted that she "keep writing them up."  Defendant Brand further repeatedly criticized Ms. Webb for telling her students that they should arrive at class on time; he insisted that Ms. Webb instead write referrals when students arrived late.    During these various conversations, Defendant Brand led Ms. Webb to believe that she would suffer adverse consequences for failing to write referrals in accordance with his demands.

39.    In fact, however, Defendant Brand knew that Ms. Webb would run into difficulty with administration for writing so many referrals, and her high referral rate (mostly due to reporting absences and tardy arrivals at class) was ultimately cited as one of the primary reasons for denying her tenure – based upon the grounds that it indicated problems with classroom management.  Ms. Webb later discovered that it was common knowledge at Ramapo H.S. that issuing too many referrals could be used against a teacher by the administration and that most teachers avoided doing so.  When Ms. Webb was criticized by the administration for writing so many referrals, she and a union representative met with Defendant Fields with a list of the referrals, pointing out that the vast majority of them were for tardies and absences and had been reported in accordance with Defendant Brand's demands.

40.     Defendant Brand also vigorously encouraged Ms. Webb to send any students with behavioral problems to his office, another fact later cited against Ms. Webb during her tenure vote.  Some of the students would later return to the classroom saying that Defendant Brand had told them that Ms. Webb was "crazy."  At least one student informed Ms. Webb that he was videotaping her with his cellphone and would provide the recording to Defendant Brand.  When Ms. Webb reported this to Defendant Brand, he replied that a similar situation had occurred at his previous school and that, while the student was warned not to do it again, the videotape had been reviewed by the principal for evidence of teacher misconduct.  Ms. Webb understood this to be a threat that the same technique might be used against her by Defendant Brand.

41.     Threats of gang activity and gang violence frequently erupted among students at Ramapo H.S.  When such an incident occurred in one of Ms. Webb's classrooms, Defendant Brand's only actions were to blame Ms. Webb instead of supporting and assisting her.  Ms. Webb finally found a seating pattern that facilitated peace in the classroom by separating various warring factions.  Defendant Brand then appeared in her classroom for a two-minute visit and, without discussing the matter with her, left a note telling her to seat the students closer together.  He was aware at this time that the situation in the class was very volatile.  Defendant Brand's actions made it difficult for Ms. Webb to maintain classroom discipline.

42.     In addition, Defendant Brand's scheduling techniques included failing to provide Ms. Webb with a fixed classroom and deliberately giving her classes scattered throughout the Ramapo H.S. building.  After assuring Ms. Webb that he would never give her a schedule that required her to move all over the school because he thought that

should be done only for teachers that were old and should be forcibly retired, he proceeded to do exactly that. Defendant Brand instead gave fixed classrooms to younger teachers or left them unoccupied, and further left other variable-use classrooms unoccupied during certain periods despite the fact that assigning them to Ms. Webb would have lessened her grueling between-period commute. Ms. Webb complained to Defendant Fields, to no avail.

43. Moreover, Defendant Brand regularly chastised and penalized Ms. Webb for not teaching "bell to bell" – despite the fact that she had numerous other instructional and non-instructional-related tasks to attend to during the five-minute interval between periods, as well as long distances to travel between classes. Defendant Brand insisted that Ms. Webb attend to these tasks – including writing detailed class instructions on the board, arranging the seats in the class, cleaning and straightening the classroom, attending to students' individual problems, signing absence reports, packing her books, and so forth – before and after class, and criticized her both orally and in writing for failure to perform any of these duties or for attending to them between the bells. Ms. Webb complained to Defendant Fields and was told to ignore Defendant Brand; doing so, however, resulted in further negative written reports from Defendant Brand regarding Ms. Webb's classroom management.

44. Defendant Brand's class scheduling and "bell-to-bell" mandates forced Ms. Webb to drag heavy bags of school materials up and down flights of stairs and over long distances several times each day, causing her chronic and continuing physical pain and injury; prevented her from being able to use the restroom for extended periods; and made it physically impossible for her to meet Defendant Brand's unrelenting and

excessive demands. As a result, Ms. Webb suffered severe emotional and physical stress.

45.     Furthermore, Defendant Brand targeted Ms. Webb by making frequent and disruptive unannounced visits to her classrooms, often multiple times in a day. During one such visit, he came in with another employee and interrupted the entire classroom lesson by moving books about while Ms. Webb was teaching. During these visits, Defendant Brand would often stand near Ms. Webb as she attempted to teach. After Defendant Brand would leave the classroom, some students commented that he seemed angry. Defendant Brand also left notes in Ms. Webb's mailbox criticizing her and demanding, without explanation, that she make changes in her classes. He often made a point of watching her as she retrieved the notes from her mailbox. Ms. Webb specifically complained to Defendant Fields about the notes. Defendant Fields told Ms. Webb to ignore these notes, although Ms. Webb pointed out that to do so would leave her vulnerable to further criticism from Defendant Brand. Ms. Webb told Defendant Fields that the combination of the visits and the fault-finding notes made it very difficult for her in the classroom and that the stress was impairing her ability to teach.

46.     Upon information and belief, Defendant Brand also used many of the same tactics against other older teachers, including but not limited to unjustified negative performance reviews, taking away their honors classes (and reassigning them to younger, less-qualified teachers), and assigning classes in subjects that they were not qualified to teach. Such discriminatory methods were effective at humiliating teachers and damaging their performance because Defendant Brand knew that these tactics would affect critical aspects of a teacher's day-to-day job experience and satisfaction. Upon information and belief, some of these older teachers also complained -- to Defendant Brand, union

representatives, and Defendant Fields, among others.  Upon information and belief, union representative Peggy Matthews reported these complaints and the teachers' concerns about the effects on their teaching to Defendant Fields on numerous occasions.

47.    Upon information and belief, Defendant Brand's actions were ignored or subtly encouraged by the Administrative Defendants, who had a vested interest in the purging of older, higher paid teachers.

48.    Upon information and belief, Defendant West aided Defendant Brand in his campaign to harass Ms. Webb and deny her tenure, including by: a) failing to show up during for several scheduled formal classroom observations; (b) extensive and unwarranted delays in submitting observational reports following formal visits to Ms. Webb's classroom; (c) appearing in Ms. Webb's classroom without warning, in violation of the provisions of the teaching contract, and (d) failing to write up any observational report; and (e) encouraging Defendant Brand in his fabricated complaints about Ms. Webb's classroom management, ultimately resulting in the denial of tenure to Ms. Webb Ms. Webb reported to Defendant Fields that Defendant West's behavior in regard to observation reports was adding to the stress she felt over the tenure process.

**B.    Gender Discrimination/Sexual Harassment**

49.    From the onset of his employment at Ramapo H.S., Defendant Brand regularly and continuously exhibited highly unprofessional behavior that created a sexually charged atmosphere and resulted in a hostile work environment towards female employees, including Ms. Webb.

50.    Defendant Brand frequently made inappropriate sexual remarks – often about students or other teachers – including, but not limited to, the following incidents:

- Defendant Brand remarked that a Muslim student had "curves in all the right places" and revealed a great deal of her body because she changed before school and her clothing was therefore always in disarray;

- Defendant Brand commented numerous times that a female mock trial student of Ms. Webb's was "supermodel material." On at least one occasion, the student asked Ms. Webb to meet her somewhere other than the English Department office because as the student said, "Defendant Brand always looks me up and down when I go in there";

- In reference to a student passing in the hallway, Defendant Brand remarked to another teacher, "If she were older and I weren't married...";

- Defendant Brand boasted that while he could not have sex with teachers because they were "under him," he nonetheless could have "affairs" with fellow chairwomen of other departments;

- Defendant Brand said that he was looking for an assisted living situation for his father that would allow his father to have women come in and have sex with him.

- On several unwelcome occasions, Defendant Brand bragged to Ms. Webb or in her presence about his romantic escapades or his involvement in sexually suggestive situations, including interactions with former students and teachers.

- On one such occasion, a former teacher came to visit the school shortly before a meeting in the English department. The former teacher left and Ms. Webb was alone in the office with Defendant Brand until another teacher arrived for the scheduled meeting. Defendant Brand then said to the other teacher: "Tracy was just here and she had her feet in my lap."

51.    Upon information and belief, several of Defendant Brand's sexually-related statements were reported to the Administrative Defendants. For example, upon information and belief, Defendant Fields was told by teacher Michelle Jacobs that Defendant Brand made the comment "If she were older and I weren't married..." in reference to a student and Defendant Fields responded that Defendant Brand was "old enough to know better." Upon information and belief, nothing was done in response and

Defendant Brand was allowed to continue his offensive and degrading behavior.

52.     During a department meeting, Defendant Brand gave the teachers a handout containing a story with the ending missing.   The story involved a girl who wishes to please a boy who wants to have sex with her.  The story ended at a point that implied a sexually explicit scene would follow.  He asked the teachers to write an ending to the story.   Ms. Webb chose not to participate in this blatantly inappropriate and demeaning activity; however, another teacher read aloud a sex scene she had written, which made Ms. Webb feel extremely uncomfortable.  Defendant Brand told his teaching staff that the exercise had been pre-approved by Defendant Neidhart.   Upon information and belief, teacher Michelle Jacobs reported to Defendant Neidhart that some teachers had found the assignment offensive and Defendant Neidhart responded that he didn't know why Defendant Brand insisted on using material with such sensitive content.  Upon information and belief, Defendant Brand was not disciplined in any manner.

53.     In approximately June 2006, Ramapo H.S. held an end of the year party for its staff, during which Defendant Brand danced with several female teachers in a sexually explicit manner. Defendant Brand approached another teacher in the English Department, insisting that she dance with him even after she repeatedly refused; he then grabbed at her hands and tried to pull her on to the dance floor.  The teacher broke free and left the party.  Defendant Brand then approached Ms. Webb and began to insist that she dance with him; she said no several times and went to dance with a group of women. At school the next day, in front of another colleague, Defendant Brand repeatedly said to Ms. Webb something like "you and I were really dancing last night."  Each time he repeated this, Ms. Webb objected that he was being untruthful.  Ms. Webb was

embarrassed and humiliated in front of her colleague because she would never dance in such an inappropriate manner at a professional function.

54.    Defendant Brand's pervasive sexually-oriented misconduct – unremedied by the Administrative Defendants – was also facilitated and encouraged by the District's lack of effective policies with regard to sexual harassment and inaction in response to other complaints.    In particular, despite Defendant Sculnick's role in fostering equal employment opportunity, there was no sexual harassment training for teachers and other personnel at Ramapo H.S. prior to Ms. Webb's departure and no manuals for the school or District.    Furthermore, despite reports made to Defendant Farmer at the time he was acting principal that school security guards were sexually harassing female students, no action was taken in response to the harassment; the only disciplinary measures initiated were towards a single guard who had impregnated a student.    Defendant Farmer told Ms. Webb that the only other thing that could be done was to advise the students to seek personal counseling from their guidance counselors.

### C.    Complaints Against Defendant Brand and Retaliation By Defendant Brand Towards Ms. Webb

55.    In early 2006, Ms. Webb became aware of a situation between Defendant Brand and another untenured colleague whom he tried to prevent from getting tenure.    As Ms. Webb walked in to the Department office, Defendant Brand looked up and said, unsolicited: "Whatever the union says, there's no way they can make me keep an untenured teacher, just like there's almost no way I can get rid of a tenured teacher.    So I don't understand why the relationship can't be more collegial.    It's the teachers who make it adversarial."    Ms. Webb replied that she was "terrified" by Defendant Brand's statement, because she was also untenured; Defendant Brand failed to respond.    Ms.

Webb reported these statements to Defendant Fields.

56.    Shortly thereafter, Ms. Webb spoke with her union representative about an unwarranted negative observation report from Defendant Brand, which contained language that he had previously admitted to her he would find extremely upsetting if used about himself. Ms. Webb further submitted written responses to Defendant Brand regarding the unjustified negative performance evaluations he gave her, in accordance with established procedure for contesting such evaluations.

57.    These responses specifically mentioned that Ms. Webb taught a grueling schedule requiring her to travel between periods and consisting largely of remedial classes with some of the most "difficult" students in the school; she objected that this schedule made it hard for her to meet his expectations of rearranging the classroom at the beginning and end of her classes while still completing full lessons. Ms Webb concluded that Defendant Brand's observations and criticisms did "not accurately reflect the depth of learning that takes place" in her classes.

58.    Several days later, Defendant Brand put Ms. Webb on an "improvement plan," which identified her supposed weaknesses as a teacher and listed a number of suggestions to address them. When Ms. Webb protested, Defendant Brand said that he did not care whether the items on the plan were true and admitted that many were unnecessary, but that she had chosen to make the process "adversarial" by going to the union. For example, the plan indicated that Ms. Webb should read books about teaching English and about classroom management, even though Defendant Brand was aware that Ms. Webb was well-read on those subjects and had recommended books to him on several occasions. When Ms. Webb specifically objected to this item, Defendant Brand

repeated, "I don't care. You've chosen to make the situation adversarial."

59.     Feeling that her prospects for tenure were being jeopardized, Ms. Webb went to Defendant Fields on many occasions to report Defendant Brand's statements, as well as his various comments regarding being able to get rid of untenured teachers, and to express her concerns regarding his actions. Ms. Webb told Defendant Fields that she was particularly alarmed because he had been accused of using similar techniques against older teachers in his previous employment. Upon information and belief, Defendant Fields was also aware of this information from other sources. Defendant Fields reassured Ms. Webb that she had "nothing to worry about" – that Ramapo H.S. administration was aware of her teaching ability – and promised that she would receive tenure as scheduled. Defendant Fields acknowledged that Defendant Brand had "something of a Napoleonic complex" and said she would try to get him to "back off."

60.     After the end of the last day of school in June 2006, Defendant Fields called Ms. Webb into her office and said that Defendant Brand had written a poor evaluation that did not reflect Ms. Webb's value to the school. Defendant Fields stated that she would rewrite the report in order to give Ms. Webb her "due." Nevertheless, over two weeks later, Ms. Webb received the same negative evaluation in the mail.

61.     In September 2006, Defendant Brand gave Ms. Webb another negative evaluation. Ms. Webb again spoke to Ms. Fields, who reiterated that she had "nothing to worry about."

62.     On several occasions, Ms. Webb and other Ramapo H.S. teachers complained about Defendant Brand's behavior – including many of the above instances of discrimination and harassment – to school administration and to union representatives

and the union's Executive Board. Upon information and belief, union representative Peggy Matthews had many meetings with Defendant Fields in which she conveyed these grievances. In these meetings, Ms. Matthews told Defendant Fields explicitly and repeatedly that Defendant Brand appeared to be targeting older teachers and harassing them in various ways. In one of the meetings, Ms. Matthews told Defendant Fields that Defendant Brand was dangerous and there could be negative repercussions for Defendant Fields and the District if he was not stopped.

63.    Despite their knowledge of the numerous grievances against Defendant Brand, upon information and belief, the Administration Defendants failed to conduct an investigation into his conduct or to take any disciplinary or corrective actions against him. Furthermore, the Administration Defendants – including Defendant Fields – failed to correct Ms. Webb's negative evaluations and improvement plan, jeopardizing her career as an educator and leading to the denial of tenure.

64.    Not only did the Administrative Defendants, as well as the District and Board, fail to take any steps to redress Ms. Webb's grievances, Defendant Brand began to retaliate against Ms. Webb for voicing her complaints, and her work situation grew increasingly worse. On several occasions, Defendant Brand made hostile remarks about teachers using the union to deal with school problems, saying it was "unprofessional" and "adversarial." He also gave an explicit directive in a departmental meeting that teachers were not to go "over his head" with their complaints to anyone in school or District administration or the union.

65.    Defendant Brand continued to give Ms. Webb negative evaluations and made sarcastic and off-putting comments about her written responses and other

complaints. As his campaign of harassment, bullying, and career sabotage intensified, Ms. Webb felt threatened and discouraged from making additional complaints.

### D.    Wrongful Denial of Tenure/Constructive Discharge

66.    In approximately November 2006, Ms. Webb received a letter from the District instructing her to get a physical exam in preparation for her tenure vote. She was informed by a colleague that "the word was" that she would receive tenure.

67.    About a week later, Ms. Webb was called in for a tenure meeting with Defendant Sculnick as well as the school's union representative and a member of the union's Executive Counsel. Ms. Webb and her union representatives presented her various positive evaluations to Defendant Sculnick and pointed out that she had exclusively received such reports until Dr. Brand's arrival. The union representatives explicitly told Defendant Sculnick that Defendant Brand appeared to be targeting and harassing older teachers, as he had been accused of doing in New York City. Defendant Sculnick said that this seemed to be the case of a "rogue" department chair and that she believed this information should be shared with the higher levels of District administration. She specifically stated that she would share with Defendant Schwartz and Defendant Farmer – the persons with ultimate authority regarding tenure decisions -- all of the information regarding Defendant Brand that had been presented to her. At the conclusion of the meeting, Defendant Sculnick urged Ms. Webb to sign a letter stating that she would be willing to accept a fourth year of probation.

68.    Upon information and belief, following this meeting but before the final tenure decision, Defendant Brand emailed Defendant Fields in words or substance, "Somebody says Webb is getting tenure. What's up with that?" This led Ms. Webb to

believe that Defendant Brand was determined to see that she did not get tenure and was still involved with the tenure process despite the decision officially being Defendant Schwartz's and Defendant Farmer's.

69.    Defendant Sculnick later reported to the union representative that Ms. Webb would not be receiving tenure but would be afforded another year of probation. Defendant Sculnick stated that Defendants Schwartz and Farmer had reviewed the evidence, including the allegations against Defendant Brand, and decided to "go with" the extended probation. Ms. Webb learned that Defendants Brand, West, and Fields had also participated in discussions regarding the tenure vote.

70.    The primary reason cited for the denial of tenure was Defendant Brand's expressed concern, taken up by Defendant West and the other decision makers, that Ms. Webb had classroom management problems; as evidence, Defendant Brand had cited her high referral rate and the fact that she sent students out of class to see him. Ms. Webb explained the situation to Defendant Fields, to no avail.

71.    By January 2007, Ms. Webb was unable to continue in the discriminatory and hostile work environment that Defendant Brand had deliberately created and that the Administrator Defendants condoned.  The Administrator Defendants did nothing to address Ms. Webb's complaints and neither conducted any investigation nor took any disciplinary or corrective actions against Defendant Brand. Furthermore, the Administrator Defendants failed to correct Ms. Webb's unwarranted negative evaluations and improvement plan. These unfair and discriminatory assessments effectively derailed Ms. Webb from the tenure track and placed her future job security in jeopardy. Ms. Webb knew that if she did not receive tenure at the end of her extended probation, she

would not be retained on staff. However, with Defendant Brand as her Department Chair and immediate supervisor, tenure would remain a virtual impossibility.

72.     Having suffered and continuing to suffer extreme psychological emotional distress as a result of Defendant Brand's relentless campaign of harassment and mistreatment and finding herself bereft of any kind of support from the Administrator Defendants and without reasonable prospects of receiving tenure, Ms. Webb had no choice but to resign from her employment on or about January 26, 2007.

73.     Ms. Webb told Defendant Fields that she felt she had to resign because she could not tolerate Defendant Brand's harassment and believed it would continue until she received tenure. Defendant Fields asked Ms. Webb to reconsider, saying she would tell Defendant Brand to "back off." Ms. Webb replied that Defendant Fields had promised the same thing at least twice during the previous school year, but that Defendant Brand's bullying, threats, and other abusive and discriminatory conduct had only gotten progressively worse. Ms. Webb said that she hated to leave her students, but could not remain at Ramapo H.S. unless she knew something would be done to end the harassment. Ms. Webb told Defendant Fields that a further probationary year would not help because it was clear that Defendant Brand would continue to write unwarranted negative observation reports until she was denied tenure. Defendant Fields suggested that it was possible that Defendant Schwartz would change his position about Ms. Webb's tenure and that Ms. Webb should wait over the weekend for his response. Defendant Webb agreed, but stated that she would resign the following week unless given some assurance that Defendant Brand's harassment would stop.

74.     In following up on this conversation, Defendant Fields did not speak with

Ms. Webb directly, but, upon information and belief, instead informed the union representative, Peggy Matthews, that nothing had changed and that Ms. Webb would only be offered another probationary year. Upon information and belief, Defendant Fields represented that this was the decision of Defendants Schwartz and Farmer, made with full knowledge that Defendant Brand was accused of pervasively targeting older female teachers, including Ms. Webb.

75.    The day following her resignation, Defendant Brand came to Ms. Webb's class, standing a few feet away from her and acting menacingly as she tried to teach a lesson. Immediately following the class, Ms. Webb went to see Defendant Brand in the Department office. Ms. Webb told Defendant Brand that his behavior was causing her emotional distress and he was making it impossible for her to teach. She suggested that he had little reason to observe her class, near the end of the semester, because he knew she had resigned. Defendant Brand responded that he had been told by the administration that she had resigned, but had not yet seen proof. Defendant Brand implied that he would continue to harass Ms. Webb until he was certain that she would no longer seek tenure, thus affirming her conviction that her cause was hopeless and that she had no choice but to leave the District because no one would help her.

76.    Ms. Webb continued to teach until the end of the semester under great emotional stress, afraid that Defendant Brand would continue to come into her classroom and harass her, impairing her efforts to help her students prepare for the upcoming Regents' Examination.

77.    Ms. Webb was replaced by a woman in her mid-twenties, who upon information and belief would have received a starting salary approximately $35,000 less

than Ms. Webb's salary for the 2006-2007 school year.

**E.    Recap of Allegations Against Individual Defendants**

78.    As described in detail above, Defendant Brand engaged in systematic and protracted discrimination, harassment, and retaliation designed to target Ms. Webb and other older teachers, to prevent her from obtaining tenure, and to force her out of the District. Defendant Brand also created a hostile work environment on the basis of gender through his frequent and pervasive sexually charged comments and behavior. Defendant Brand's calculated actions resulted in the wrongful denial of tenure to Ms. Webb as well as her constructive discharge.

79.    The Administrative Defendants set educational, administrative, and employment policy for the District and Ramapo H.S.; failed to implement policies and procedures to prevent sexual harassment and discrimination and to adequately address complaints; and expressly or tacitly condoned or ratified harassing, discriminatory, and abusive behavior by Defendant Brand and other District and school personnel. The Administrative Defendants were responsible for negligently hiring, supervising, and retaining Defendant Brand despite the fact that a simple background check would have revealed his malign proclivities. Upon information and belief, at the time Defendant Brand was hired, a minimal check would have revealed claims against Defendant Brand by teachers and/or students in his previous employment in New York City, Scarsdale, New York, and/or Hackensack, New Jersey. The Administrative Defendants failed to investigate or respond to numerous claims and allegations against him by Ms. Webb and other teachers, and declined to discipline him in any manner. Furthermore, the Administrative Defendants neglected to remedy his unwarranted criticisms of Ms. Webb,

instead adopting them to deny her tenure. These Defendants' various acts and omissions substantially contributed to Ms. Webb's constructive discharge.

80. Defendant Schwartz failed to establish adequate District policies to prevent discrimination and harassment and to train personnel accordingly. To the extent he was aware or should have been aware of Defendant Brand's offending conduct, Defendant Schwartz failed to take appropriate responsive action, thereby allowing Defendant Brand to continue his repulsive behavior. Furthermore, Defendant Schwartz participated in and/or approved the decisions to hire and retain Defendant Brand and to deny tenure to Ms. Webb. Upon information and belief, Defendant Schwartz decided to deny Ms. Webb's tenure despite full knowledge of the allegations against Defendant Brand, and took no other actions to address Defendant Brand's behavior.

81. Defendant Farmer failed to formulate and enforce adequate programs and policies to prevent discrimination and harassment in the District's secondary schools and to formulate and implement corresponding training for their personnel. To the extent he was aware or should have been aware of Defendant Brand's offending conduct, Defendant Farmer failed to take appropriate responsive action, also perpetuating Defendant Brand's outrageous behavior. Furthermore, Defendant Farmer participated in and/or approved the decisions to hire and retain Defendant Brand and to deny tenure to Ms. Webb. Upon information and belief, Defendant Farmer decided to deny Ms. Webb's tenure despite full knowledge of the allegations against Defendant Brand, and took no other actions to address Defendant Brand's behavior.

82. Defendant Sculnick was primarily responsible for ensuring the District's compliance with equal employment opportunity and anti-discrimination laws; however,

like the other Administrator Defendants, she failed to formulate, adopt, and enforce adequate policies and procedures to prevent discrimination and harassment and to provide for the reasonable and appropriate investigation of complaints. In fact, despite Defendant Sculnick's knowledge of Ms. Webb's and other teachers' grievances against Defendant Brand, she neglected to undertake basic measures to investigate the allegations and to discipline him and put a stop to his harmful behavior. Moreover, Defendant Sculnick directly participated in the decisions to hire and retain Defendant Brand, and took a leading role in the decision-making process regarding Ms. Webb's tenure, including the ultimate decision to deny tenure and extend Ms. Webb's probation.

83.    Defendant Fields failed to instill adequate policies and procedures at Ramapo H.S. to prevent discrimination and harassment, and on numerous occasions failed to respond to serious allegations against Defendant Brand. Despite her repeated promises and assurances to Ms. Webb, Defendant Fields did nothing to investigate or discipline Defendant Brand or curtail his behavior, neglected to correct his negative performance evaluations, and declined to step in to help Ms. Webb receive tenure. Defendant Fields further failed to write up a report of her own positive classroom observation of Ms. Webb, as she had promised. Instead, Defendant Fields participated in the decision to deny tenure and extend Ms. Webb's probation – citing Defendant Brand's unjustified criticisms as justification for the outcome of the tenure vote. Defendant Fields was also involved in the decisions to hire and retain Defendant Brand despite his employment history and conduct at Ramapo H.S.

84.    According to Defendant Brand, Defendant Neidhart pre-approved a highly inappropriate departmental exercise in which teachers were coerced to engage in sexually

explicit readings.   When confronted by teachers, who objected that the exercise was offensive and demeaning, Defendant Neidhart shrugged them off and neglected to take appropriate responsive measures.

85.    Defendant West assisted Defendant Brand in his harassment of Ms. Webb as alleged above, including by failing to write up observational reports which would have afforded Ms. Webb an opportunity to rebut any allegations against her.   Furthermore, Defendant West participated in the decision to deny tenure to Ms. Webb – upon information and belief, taking a strong position against her candidacy.

<u>COUNT I</u>

**VIOLATIONS OF AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"),
29 U.S.C. §§ 621, *et. seq.* – AGE DISCRIMINATION
(Against District and Board)**

86.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

87.    Defendant Brand engaged in a relentless campaign of disparate treatment and harassment against Ms. Webb and other teachers over forty years of age designed to target them, make their jobs intolerable, and ultimately force them out of the District.

88.    Defendants District and Board failed to conduct a basic background investigation into Defendant Brand, either in advance of his hiring or in response to complaints from Ms. Webb and other teachers.   Upon information and belief, a minimal background check would have revealed charges against Defendant Brand by teachers and/or students at schools where he had been employed in New York City, Scarsdale, New York, and/or Hackensack, New Jersey. Furthermore, all Defendants tolerated, condoned, ratified and/or engaged in Defendant Brand's discriminatory conduct or, in the

alternative, knew, or should have known, of its existence and failed to take remedial measures. Moreover, the District and the Board are vicariously liable for the actions of Defendant Brand, Ms. Webb's immediate supervisor, as well as her successive supervisors, the Administrator Defendants.

89.     Defendants' collective actions resulted in the creation of a hostile work environment and finally in the wrongful denial of tenure and Ms. Webb's constructive discharge. Ms. Webb was replaced by an employee in her twenties.

90.     By reason of the Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available for violations of the ADEA, including liquidated damages.

91.     Attorneys' fees should be awarded under 29 U.S.C. § 626(b).

## COUNT II

### VIOLATIONS OF ADEA, 29 U.S.C. § 623(d) – RETALIATION
### (Against District and Board)

92.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

93.     Ms. Webb complained in writing to Defendant Brand about unwarranted negative performance reviews. In addition, Ms. Webb repeatedly voiced her complaints to the Administrator Defendants as well as to her union.

94.     As a result of Ms. Webb's complaints, Defendant Brand intensified his campaign of harassment against her. Moreover, in addition to further negative evaluations, Defendant Brand wrote a disciplinary "improvement plan" for Ms. Webb which he admitted was unjustified.

95.     The retaliation against Ms. Webb, like the underlying acts of age

31

discrimination, continued to go unaddressed. Such retaliatory conduct was tolerated, condoned, ratified and/or engaged in by the District and the Board – which are also subject to vicarious liability – and contributed to the wrongful denial of tenure and Ms. Webb's constructive discharge.

96.    By reason of the Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available for violations of the ADEA, including liquidated damages.

97.    Attorneys' fees should be awarded under 29 U.S.C. § 626(b).

## COUNT III

**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
42 U.S.C. §§ 2000(e),** *et seq.,* **AS AMENDED
SEXUAL HARASSMENT (HOSTILE WORK ENVIRONMENT)
(Against Defendants District and Board)**

98.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

99.    Defendant Brand's severe and pervasive sexually-charged conduct – including frequent and persistent sexual remarks and innuendos as well as his gratuitous and discomfiting "instructional" exercise in which teachers were asked to write and present a sex scene during a departmental meeting – cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Webb's employment.

100.    The District and the Board – through their administrators – failed to take any action in response to Ms. Webb's and other teachers' complaints about Defendant Brand's conduct and did not investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences. As such, the Administrator

Defendants tolerated, condoned, ratified and/or engaged in the harassment perpetrated by Defendant Brand. Moreover, the District and the Board are subject to vicarious liability for the acts and omissions of Defendant Brand and the Administrator Defendants.

101.    Ms. Webb was psychologically and emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as the failure of the District and the Board to respond thereto. Furthermore, the ongoing, unaddressed sexual harassment and degrading and humiliating treatment contributed to Ms. Webb's constructive discharge.

102.    By reason of the Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available for violations of Title VII.

103.    Attorneys' fees should be awarded under 42 U.S.C. §2000e-5(k).

<u>**COUNT IV**</u>

**VIOLATIONS OF TITLE VII – RETALIATION**
**(Against Defendants District and Board)**

104.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

105.    Ms. Webb voiced various complaints to her union as well as to a tenured teacher, Michelle Jacobs, about Defendant Brand's continuous and serious sexually offensive and hostile conduct. Ms. Webb complained not only on her own behalf but on the behalf of other District employees as well as students subjected to Defendant Brand's behavior. Ms. Webb's reports were relayed to the Administrator Defendants and also made their way back to Defendant Brand.

106.    As a result, Defendant Brand began to target Ms. Webb directly, not only based upon her age, but also upon her complaints against him. His retaliatory actions involved intensified verbal harassment and threats, further negative performance reviews,

and the creation of a disciplinary "improvement plan." These measures were intended to and did in fact hinder Ms. Webb's job security, advancement, and sense of well-being.

107. Defendant Brand's retaliation against Ms. Webb, like the underlying sexual harassment, continued to go unaddressed. Such retaliatory conduct was tolerated, condoned, ratified and/or engaged in by the District and the Board – which are also vicariously liable – and contributed to the wrongful denial of tenure and Ms. Webb's constructive discharge.

108. By reason of the Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available for violations of Title VII.

109. Attorneys' fees should be awarded under 42 U.S.C. §2000e-5(k).

## COUNT V

### VIOLATIONS OF TITLE IX – SEX DISCRIMINATION IN FEDERALLY FUNDED EDUCATIONAL PROGRAMS, 20 U.S.C. § 1681 SEXUAL HARASSMENT (HOSTILE WORK ENVIRONMENT) (Against Defendants District and Board)

110. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

111. Upon information and belief, the District is a recipient of federal funds.

112. The District and the Board subjected Ms. Webb to sexual harassment as alleged herein.

113. The Defendants' conduct in violation of Title IX has injured and damaged Ms. Webb.

114. By reason of the Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available for violations of Title IX, including punitive damages.

115.    Attorneys' fees should be awarded under 42 U.S.C. § 1988(b).

## COUNT VI

### VIOLATIONS OF TITLE IX – RETALIATION
### (Against Defendants District and Board)

116.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

117.    As alleged, Ms. Webb complained to various administrators and union officials regarding intentional sex discrimination under Title IX – namely the creation of a hostile work environment on the basis of Defendant Brand's persistent sexually charged comments and behavior.  Ms. Webb further voiced complaints as to Defendant Brand's sexual harassment of students at Ramapo H.S., also prohibited by Title IX.

118.    As a result, Ms. Webb suffered adverse employment actions including unjustified evaluations and disciplinary measures, leading to the wrongful denial of tenure and her constructive discharge from employment.

119.    By reason of the Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available for violations of Title IX, including punitive damages.

120.    Attorneys' fees should be awarded under 42 U.S.C. § 1988(b).

## COUNT VII

### 42 U.S.C. § 1983 – EQUAL PROTECTION
### (Against all Defendants)

121.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

122.    Under the Fourteenth Amendment, Ms. Webb had a constitutional right to

a work environment free of discrimination including sexual harassment.

123.    As alleged above, Defendant Brand violated this right by imposing a discriminatory hostile work environment based on gender, engaging in a protracted campaign of age-based harassment and disparate treatment designed to force Ms. Webb and her peers out of the District, concocting unjustified performance reviews and disciplinary measures, and retaliating against Ms. Webb for her various attempts to redress these matters. These actions – left unaddressed by the Administrator Defendants, despite ample notice – culminated in the wrongful denial of tenure by the District and the Board and Ms. Webb's constructive discharge.

124.    In perpetrating these constitutional violations, the Individual Defendants acted by virtue of state-conferred authority and under color of state law.

125.    The Administrator Defendants' egregious failure to properly investigate and address Ms. Webb's complaints – which were corroborated by other individuals – demonstrates their constructive acquiescence in Defendant Brand's behavior and rendered his conduct an accepted custom or practice of the District and the Board. Furthermore, the District and the Board so abysmally failed to train their employees – including the Individual Defendants – to refrain from, prevent, remedy, and root out discrimination and harassment as to display deliberate indifference to their employees' constitutional rights.

126.    The Defendants' conduct in violation of the Equal Protection Clause has injured and damaged Ms. Webb.

127.    By reason of the Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available pursuant to 42 U.S.C. § 1983

including punitive damages against Defendant Brand and the Administrator Defendants.

128.    Attorneys' fees should be awarded under 42 U.S.C. § 1988(b).

## COUNT VIII

### VIOLATIONS OF NEW YORK EXECUTIVE LAW § 296, subds. 1(a) & 3-a(a)
### AGE DISCRIMINATION
### (Against Defendants Brand, Fields, West, and Neidhart)

129.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

130.    Defendants subjected Plaintiff to age discrimination as alleged herein, including the imposition of a hostile work environment, disparate treatment resulting in the wrongful denial of tenure, and constructive discharge.

131.    Defendants' conduct in violation of New York Executive Law § 296, subds. 1(a) and 3-a(a) has injured and damaged Ms. Webb.

132.    By reason of Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available for violations of N.Y. Exec. L. § 296.

## COUNT IX

### VIOLATIONS OF NEW YORK EXECUTIVE LAW § 296, subd. 1(a)
### SEXUAL HARASSMENT
### (Against Defendants Brand, Fields, West, and Neidhart)

133.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

134.    Defendants subjected Ms. Webb to sexual harassment as alleged herein.

135.    Defendants' conduct in violation of N.Y. Exec. L. § 296, subd. 1(a) has injured and damaged Ms. Webb.

136.    By reason of Defendants' conduct as alleged herein, Ms. Webb is entitled

to all legal and equitable remedies available for violations of N.Y. Exec. L. § 296.

## COUNT X

### VIOLATIONS OF NEW YORK EXECUTIVE LAW § 296, subds. 3-a(c) & 7 RETALIATION
### (Against Defendants Brand, Fields, West, and Neidhart)

137.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the aforementioned paragraphs as though fully set forth herein.

138.    As alleged herein, Defendants retaliated against Ms. Webb for opposing Defendant Brand's various violations of N.Y. Exec. L. §§ 296(1)(a) and (3-a)(a) – namely age and gender discrimination including ongoing harassment, disparate treatment, and the creation of a hostile work environment and/or failed to address and remedy Defendant Brand's retaliatory conduct.

139.    Such retaliation, as alleged herein, consisted of further harassment and abuse – including statements of a threatening nature, negative performance reviews, and the institution of unwarranted and disparate disciplinary measures (i.e. the "improvement plan"). As a result, Defendants wrongfully denied tenure to Ms. Webb and constructively discharged her from employment.

140.    Defendants' conduct in violation of N.Y. Exec. L. §§ 296 (3-a)(c) and 7 has injured and damaged Ms. Webb.

141.    By reason of Defendants' conduct as alleged herein, Ms. Webb is entitled to all legal and equitable remedies available for violations of N.Y. Exec. L. § 296.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

a.    Acceptance of jurisdiction of this cause;

b.      An award of back pay; front pay; lost job benefits; and other equitable relief;

c.      An award of compensatory damages, in the amount of $300,000 for Counts 3 and 4, and in the amount of $10,000,000 for all other Counts;

d.      Liquidated damages on Counts 1 and 2;

e.      Punitive damages in the amount of $10,000,000 on Counts 5-7;

f.      Prejudgment and postjudgment interest; and

g.      Such other and further relief as the Court may deem just and proper.

## VII.   JURY DEMAND

Plaintiff demands a trial by jury of all issues.

Dated: August 20, 2008

SANFORD, WITTELS & HEISLER, LLP

By:    /s/  Steven  L. Wittels
Steven L. Wittels, SLW-8110
Jeremy Heisler, JH-0145
Andrew Melzer, AM-7649
SANFORD WITTELS & HEISLER, LLP
950 Third Avenue, 10th Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

David W. Sanford, D.C. Bar No. 457933
SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Tel: (202) 742-7777
Fax: (202) 742-7776

*Attorneys for Plaintiff Cynthia Webb*